## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DONALD E. THEIS,          )
                                 )
        Plaintiff,        )
                                 )
    vs.                )        **Case No. 4:11CV799MLM**
                                 )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,   )
                                 )
        Defendant.     )

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Donald E. Theis ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) et seq. Plaintiff filed a Brief in Support of the Complaint. Doc.13. Defendant filed a Brief in Support of the Answer. Doc.14. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 15.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application SSI on May 10, 2007, alleging a disability onset date of May 2, 2007. Tr. 122-24. Following an unfavorable determination, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 57. On November 9, 2009, a hearing was held before an ALJ. Tr. 20-36. On January 25, 2010, the ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 9-19. Plaintiff sought review of the ALJ's decision with the Appeals Council. Tr. 118-21. On March 2, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing that he had a GED; that his prior work was as a floor installer and refinisher; that he was not permitted to drive due to seizures; that he had headaches two to three days a week; and that he had surgery for seizures. Tr. 24, 29-10, 32-33. The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 10, 2007; that he had the severe impairment of an arteriovenous malformation with an intraventricular hemorrhage and a seizure disorder; that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff had the RFC to perform light work with certain limitations including that he can never climb and must avoid unprotected heights and dangerous moving machinery; that Plaintiff could not perform any of his past relevant work; that, based on 20 C.F.R. § 416.969 and § 416.969(a), there is work in the national economy which Plaintiff can perform; and that, therefore, Plaintiff is not disabled. Tr. 11-19.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to sufficiently cite medical evidence to support his RFC determination; because the ALJ substituted a credibility determination for a RFC analysis; because the ALJ erred upon finding that there was "no evidence" to support a listing; because the ALJ failed to include non-exertional limitations when determining Plaintiff's RFC; because the ALJ failed to obtain the testimony of a VE; and because the ALJ failed to consider factors set out in Polaski, 739 F.2d at 1321-22, when considering Plaintiff's credibility.

A.      Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, despite Plaintiff's suggestion to the contrary, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer

to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, upon considering Plaintiff's credibility, the ALJ considered discrepancies between Plaintiff's testimony at the hearing and his reports to physicians regarding the frequency and severity of his seizures. Tr. 15.  In particular, Plaintiff testified that prior to having gamma knife radiosurgery, he had three to four seizures a month and that, after having this surgery in May 2007, he had one to two severe seizures every month. Tr. 22-34.  As considered by the ALJ, Plaintiff's medical records from Barnes Jewish Hospital ("BJH") reflect that, prior to his having surgery , Plaintiff reported that he had seizures three to four times a year. Tr. 15, 225.  On June 22, 2007, it was reported that Plaintiff said he had seizures "approximately once a month for the prior 6 months." Tr. 314.  On August 27, 2007, Plaintiff reported to Keith Rich, M.D., that he had no seizures since his May 2007 hospitalization and that he was "doing fairly well."  Also, Dr. Rich reported on this date that Plaintiff was "clinically stable from a neurosurgery standpoint" and that Plaintiff should return in one year. Tr. 351.  On August 25, 2008, Dr. Rich reported that Plaintiff had done well in the past year "with no new neurologic symptoms; that Plaintiff said he had "some occasional headaches which [were] not particularly new"; and that Plaintiff was scheduled for follow-up in one year. Tr. 350.  Indeed, when Plaintiff was admitted to BJH on August 31, 2009, he reported that he had "general tonic-clonic seizure[s] ... about 1-2 times a month";  that he had "new visual spells" "3-4 times per week"; and that he had headaches. Tr. 435.  Also, on this date, as discussed by Plaintiff, it was reported that he had a video electoencephalogram ("EEG") in September 2009.  It was reported that Plaintiff had a "spell" during the video EEG; that his "vitals were all normal"; that Plaintiff talked with the doctor

during the "whole process of his spell; and that when the doctor checked the "video EEG, there was no epileptiform recorded ... so the next day, on September 5, [they discharged [Plaintiff] home." Tr. 435. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). As such, the court finds that the ALJ's consideration of the discrepancies between Plaintiff's testimony and what he told doctors is supported by substantial evidence and that it is consistent with the Regulations and case law.

Second, it was reported on August 31, 2009, that Plaintiff's "general tonic-clonic seizure[s] were under control with carbamzephine. Tr. 435. Conditions which can be controlled by treatment are not disabling. See Harris v. Heckler, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985). See also Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989)( holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Third, as considered by the ALJ, Plaintiff's treatment records and history are inconsistent with his claim regarding the frequency and severity of his seizures. The record does not reflect that Plaintiff had regular treatment for seizure or headaches after his May 2007 surgery. Indeed, Plaintiff presented to the emergency room due to seizures on April 25, 2007, and on May 2, 2007, due to severe headache, and was hospitalized from May 3 through May 7, 2007, and May14 through May 18, 2007, due to severe headache and possible recurrent intracerebral hemorrhage. Tr. 298, 204, 216-17, 228, 314. After Plaintiff had surgery on May 24, 2007, to treat his intraventricular hemorrhage and seizure disorder (AVM"), Plaintiff presented to the emergency room on May 25, 2007, June 22, 2007, and April 8, 2009, and he was seen only for follow-up in August 2007, September 2008, and May 26, 2009. Significantly, the ALJ asked Plaintiff's attorney if the record was complete and the

attorney responded that it was with the exception of Plaintiff's records after April 2007, which were made a part of the record. The failure to seek regular medical assistance for an alleged impairment is reason to discredit a claimant's allegation of a disabling condition. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

Fifth, as considered by the ALJ, Plaintiff's AVM was a congenital condition which he had since birth. Tr. 14. Despite his having this life-long condition, Plaintiff demonstrated an ability to work. Tr. 126. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. As such, the court finds that substantial evidence supports the ALJ's consideration of Plaintiff's having been born with AVM and that he worked with that condition. Further, the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Sixth, as considered by the ALJ, the record reflects that Plaintiff was not always compliant with treatment. Tr. 14, 16. BJH Emergency Room records of April 25, 2007, reflect that, when presenting after having seizures that morning, Plaintiff said that he had been "noncompliant w/ carbamazapine recently" and had "not seen neuro 'forever.'" Tr. 11, 299. When Plaintiff presented to the BJH Emergency Room on May 25, 2007, Plaintiff reported that he had a seizure followed by headache and that he had "missed dose of tegretol" the prior night. Tr. 281. Additionally, on June 25, 2007, it was reported that Plaintiff headache was "most likely a chronic daily headache with

medication overuse" and that Plaintiff was "counseled [] to eliminate Ibuprofen." Tr. 15, 316. On April 8, 2009, it was reported that Plaintiff had not increased his dose of Topamax, as recommended. Tr. 16, 384. Further, Plaintiff instructed to stop smoking and was given smoking cessation information in April, May, and June 2007, but the record reflects that he continued to smoke and that he was smoking a pack of cigarettes a day in April 2009. Tr. 289, 306, 313, 385, 410. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that the ALJ can discredit subjective complaints of pain based on claimant's failure to follow prescribed course of treatment); Weber v. Harris, 640 F.2d 176, 178 (8th Cir. 1981). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

Seventh, no doctor opined that Plaintiff was unable to work. In fact, Plaintiff's doctors described limitations consistent with the ALJ's RFC determination. In particular, on August 25, 2008, Dr. Rich reported that Plaintiff had been previously advised to avoid driving, working at heights, and working around dangerous machinery. Tr. 315, 350. A record which contains no physician opinion of disability detracts from claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981).

Eighth, the ALJ considered Plaintiff's daily activities. Tr.17. Plaintiff testified that during the day he prepared meals, went shopping, washed dishes, watched television, vacuumed, and washed laundry. Tr. 28-29. Additionally, in a July 5, 2007 Function Report, Plaintiff stated that he took care of pets by feeding and walking them; that he cooked simple meals; that he could do housework; that

he went outside on a daily basis; that, when going out, he traveled by walking and riding in a car; that he shopped for "whatever [he] need[ed]"; that he could pay bills, count change, and use a checkbook; and that he played computer and video games and would draw. Tr. 172-75. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). An ALJ, however, is not required to believe all of a claimant's assertions concerning her daily activities. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Ninth, the ALJ considered Plaintiff's demeanor at the hearing and that it indicated that Plaintiff's household responsibilities were greater than he indicated. Tr. 17. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations. As such, the court finds that the ALJ's consideration of Plaintiff's demeanor is based on substantial evidence and that it is consistent with the Regulations and case law.

Tenth, the ALJ considered that, although Plaintiff suggested that his lack of compliance with prescribed medical treatment was due to a lack of finances, Plaintiff was able to afford cigarettes and marijuana during the relevant period. Tr. 16. The court has addressed Plaintiff's cigarette smoking above. Additionally, Plaintiff testified at the hearing that he still smoked marijuana and that he had done so two weeks prior to the hearing. Tr. 34. Despite Plaintiff's arguing that the ALJ should not have considered the inconsistency between Plaintiff's stating that he could not afford prescribed treatment and his affording cigarettes and marijuana, the Eighth Circuit has held that such a consideration is proper. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999). In any case, the record reflects that Plaintiff's lack of treatment was based on a lack of symptoms. As discussed

above, when Plaintiff presented in August 2007 and in September 2008 it was for follow-up and he reported that he had been doing well.  The court finds, therefore, that the ALJ properly considered Plaintiff's smoking despite his allegation that his lack of treatment and non-compliance was due to lack of financial resources and that the ALJ's decision, in this regard, is based on substantial evidence.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.     Plaintiff's Failure to Meet or Equal a Listing:**

As discussed above, the Commissioner must sequentially consider, at step 2, whether he has a medically severe impairment that meets the duration requirement and, at step 3, whether his impairment meets or equals one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); <u>Goff</u>, 421 F.3d at 789-90; 20 C.F.R. § 404.1520. If the claimant has a severe impairment which meets or medically equals a Listing, the claimant is conclusively presumed to be disabled. <u>Bowen</u>, 482 U.S. at 141. On the other hand, if the impairment is not one that meets or equals one of the Listings, the Commissioner must determine whether the impairment prevents the claimant from performing work that he has performed in the past or whether he is able to perform other work in the national economy in view of his age, education, and work experience. <u>Id</u>. at 141-42.

In her decision, the ALJ found that Plaintiff did not present evidence to establish that he satisfied all the requirements of the listings for convulsive epilepsy, nonconvulsive epilepsy, or central nervous system vascular accident, 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.02, 11.03, 11.04. Tr. 11. As discussed above, when Plaintiff presented to the emergency room reporting a seizure on April 25, 2007, Plaintiff had been non-compliant with carbamazepine and had not been to a doctor "forever." Tr. 299.  Listings 11.02 and 11.03 provide that "the criteria can be applied only if the impairment

16

persists despite the fact that the individual is following prescribed antiepileptic treatment."  Further, SSR 87-6 provides that "[i]f an individual does not have an ongoing treatment relationship, it would be unreasonable to assume that the seizures cannot be controlled with medication, at least to the level at which the listing would not be met or equaled."  Although Listing 11.02 and 11.03 require that the claimant have severe grand mal seizures more than once a month or less severe seizures on a more than weekly basis, Plaintiff reported, as discussed above,  that he had seizures "3 to 4 times a year." Tr. 11, 225.  Additionally, Plaintiff told Dr. Rich, in August 2007, that he had not had any seizures since his May 2007 hospitalization and in August 2008 Plaintiff reported no new neurologic symptoms. Tr. 350-51.  Indeed, the infrequency of Plaintiff's having seizures precludes his meeting Listing 11.02 or 11.03.

The ALJ also considered whether Plaintiff's AVM would satisfy the requirements of Listing 11.04, the Listing for central nervous system vascular accidents (strokes). Tr. 11-12.  This Listing requires severe symptoms such as sensory or motor aphasia resulting in ineffective speech or communication or severe and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station lasting more than three months after a vascular accident.  The ALJ considered that Plaintiff had no such symptoms. Rather, on May 17, 2007, it was reported that Plaintiff's motor strength was 5/5; that his sensation to touch was intact in the upper and lower extremities; that his coordination was intact; that he had no clubbing, cyanosis, or edema in his extremities; and that Plaintiff expressed no complaints regarding, among other things, his musculoskeletal system. Tr. 360.  On August 27, 2007, three months after Plaintiff was hospitalized and had surgery, Dr. Rich reported that Plaintiff's speech was clear; that his conversation was appropriate; that his face was symmetrical; that his visual field was grossly full; and his gait was stable. Tr. 351. On April 8, 2009, BJH Emergency Department records

reflect that Plaintiff had no motor or sensory deficit and that Plaintiff was moving all four extremities equally. Tr. 468-69. As such, the court finds that substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal a Listed impairment and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

## C.      Plaintiff's RFC:

The ALJ found the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b)[1] except that he can never climb ropes, ladders, or scaffolds and that he must avoid all exposure to temperature and humidity extremes, unprotected heights, and hazards of dangerous moving machinery. Tr. 12.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).

As set forth above, in regard to Plaintiff's credibility and in regard to whether he met or equaled a Listing, the ALJ considered the extent to which Plaintiff's allegations were credible in view of the record as a whole, including doctors' objective findings and Plaintiff's description to doctors of his

---

[1]      The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6.

symptoms and abilities. Only after doing so, did the ALJ determine Plaintiff's RFC. Thus, Plaintiff's argument that the ALJ substituted a credibility determination for an RFC analysis is without merit. As set forth above, the ALJ complied with the Regulations when she evaluated Plaintiff's credibility prior to determining his RFC. See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility.").

Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591. In particular, the ALJ in the matter under consideration noted that Plaintiff underwent gamma knife surgery for his AVM on May 24, 2007; that Plaintiff returned to the emergency room after being discharged and having not taken his evening dose of seizure medication; that normal neurological findings were made in the emergency room; that Plaintiff told doctors, in June 2007, that he had seizures once a month for the prior six months and that contradicted his testimony at the hearing that he had two or more seizures a month prior to surgery and one to two a month after surgery; that medical opinion was that Plaintiff's headaches were due to medication overuse; that, in August 2007, Dr. Rich reported that Plaintiff was doing well; that a year later Plaintiff had no new

19

neurological symptoms and a CT showed no changes; and that, in June 2009, there were no clinical abnormalities and, in fact, there was "a significant decrease in the size of [Plaintiff's] AVM." Tr. 15-16, 432. Most significantly, Dr. Rich reported on June 4, 2009, as discussed above, that Plaintiff's "motor exam showed him to be strong throughout"; that he was alert and his speech was clear; that Dr. Rich's impression was that Plaintiff "remain[ed] clinically stable from a neurosurgery standpoint; and that the decrease in the size of his lesion was significant. Tr. 432. Thus, the ALJ's consideration of Plaintiff's medical records, upon her determining Plaintiff's RFC, is based on substantial evidence and consistent with the requirements of the Regulations and case law. See Eichelberger, 390 F.3d at 591; Lauer, 245 F.3d at 704; Singh, 222 F.3d at 451. Further, the court finds that Plaintiff's argument that the ALJ failed to sufficiently cite medical evidence when determining Plaintiff's RFC is without merit. The ALJ clearly considered the medical evidence of record. To the extent the ALJ may not have mentioned any particular matter reported by a doctor, this does not mean the ALJ did not consider such evidence. See Moore ex rel. Moore v. Barnhart, 413 F.3d718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his] inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden

of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish [his or] her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737). See also Vossen, 612 F.3d at 1016.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Consistent with these requirements, the ALJ found that Plaintiff could not perform his past relevant work as an assembly line riveter, dishwasher, and flooring installer/refinisher because his environmental and postural limitations preclude his performing these jobs. Tr. 18. As such, the ALJ proceeded to determine Plaintiff's exertional level. When doing so, the ALJ incorporated the limitations imposed by Plaintiff's doctors, including that he should avoid heights and moving machinery. In particular, the ALJ considered the opinion of Richard Sohn, M.D., in June 2007, that Plaintiff should avoid working at heights, operating heavy machinery, cooking over an open flame, or other activities which could be come dangerous in the event of a seizure. Tr. 17, 315. The ALJ also considered that Dr. Rich

advised Plaintiff, in August 2008, among other things, to avoid driving, working at heights, and working around dangerous machinery. Tr. 17, 350. None of Plaintiff's physician's indicated additional limitations from those included in the ALJ's RFC determination.

The ALJ's determination of Plaintiff's RFC is precise as it directly addresses his restrictions and the requirements of light work. Additionally, the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). As such, the court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the Regulations and case law and that all arguments which Plaintiff makes to the contrary are without merit.

**D.     The ALJ's Reliance on the Medical-Vocational Guidelines:**

Plaintiff contends that the ALJ erred in applying the Medical-Vocational Guidelines (the "Guidelines") rather than obtaining the testimony of a VE because Plaintiff has a non-exertional impairment.

Resort to the Guidelines is only appropriate when there are no non-exertional impairments that substantially limit the ability of a claimant to perform substantially gainful activity. As discussed above, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional

impairments, the Commissioner may meet this burden by referring to the Guidelines. See Robinson, 956 F.2d at 839. If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a VE to establish that there are jobs in the national economy that the claimant can perform. See id. On the other hand, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)).

SSR 83-10, 1983 WL 31251, at *6, defines a non-exertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, further defines non-exertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities." SSR 83-10, 1983 WL 31251, at *7, defines nonexertional restriction as an "impairment-caused need to avoid one or more environmental conditions in a workplace."

The ALJ in the matter under consideration did not find that Plaintiff had a non-exertional impairment. Moreover, the court has found that the ALJ's RFC determination is based on substantial evidence. As such, the ALJ was not required to obtain the testimony of a VE and properly relied on the Guidelines. See Robinson, 956 F.2d at 839.

To the extent Plaintiff relies on King v. Astrue, 564 F.3d 978 (8th Cir. 1997), and Wheeler v. Sullivan, 888 F.2d 1233 (8th Cir. 1989), for the proposition that the limitations found by the ALJ

are non-exertional and/or that the ALJ should have called a VE, these cases merely hold that an ALJ cannot rely on the Guidelines where a claimant has a **mental impairment**. The court has set forth above the definition of a mental impairment. Moreover, 20 C.F.R. pt. P, app. 1, § 12.00 sets forth the conditions which are considered mental disorders for purposes of Social Security; AVM with an intraventricular hemorrhage and a seizure disorder are not included. On the contrary, SSR 85-14, at *4 (1985), provides that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." Additionally, the Eighth Circuit has held that an ALJ properly relied on the Guidelines where the claimant had, among other things, a seizure disorder. See Thompson v. Astrue, 226 Fed. Appx. 617, 62-21, 2007 WL 601596 (8th Cir. 2007). See also Nielson v. Barnhart, 88 Fed. Appx. 145 (8th Cir. 2004).

As such, the court finds that the ALJ properly relied on the Guidelines and that substantial evidence supports the ALJ's decision in this regard. See Reynolds, 82 F.3d at 258. Plaintiff's argument, that the ALJ should have utilized the testimony of a VE, therefore, is without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Plaintiff's Complaint is **DENIED**; Docs. 1, 13,

**IT IS FURTHER ORDERED** that a separate judgment be entered following this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 18th day of June, 2012.